UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| **TRAKILISHA SIMMONS,**<br>Plaintiff,<br><br>v.<br><br>**FIRST PREMIER BANK, N.A. and DOES 1-10 inclusive,**<br><br>Defendant. | **COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

1.  "Robocalls" are the #1 consumer complaint in America today.

2.  In 2016, there were almost 4,000,000 complaints reported to the Federal Communications Commission (FCC) and the Federal Trade Commission (FTC) concerning robocalls—3,857,627 to be exact.[1] In 2015 and 2014, the robocall complaints reached 2,636,477 and 1,949,603, respectively.[2] It is important to recognize

---

[1] *National Do Not Call Registry Data Book FY 2016, October 1, 2015 – September 30, 2016*, FEDERAL TRADE COMMISSION (Dec. 2016), https://www.ftc.gov/system/files/documents/reports/national-do-not-call-registry-data- book-fiscal-year-2016/dnc_data_book_fy_2016_post.pdf; *Consumer Complaints Data – Unwanted Calls, FCC – Open Data*, FEDERAL COMMUNICATIONS COMMISSION, https://opendata.fcc.gov/Consumer-and-Government- Affairs/Consumer-Complaints-Data-Unwanted-Calls/vakf-fz8e.

[2] *National Do Not Call Registry Data Book FY 2015*, FEDERAL TRADE COMMISSION (Nov. 2015), https://www.ftc.gov/system/files/documents/reports/national-do-not-call-registry-data-book-fiscal-year-2015/dncdatabookfy2015.pdf; *Consumer Complaints Data – Unwanted Calls, FCC – Open Data*, FEDERAL COMMUNICATIONS COMMISSION, https://opendata.fcc.gov/Consumer-and-Government-Affairs/Consumer-Complaints-Data-Unwanted-Calls/vakf-fz8e; *Fact Sheet: Wheeler Proposal to Protect and Empower Consumers Against Unwanted Robocalls, Texts to Wireless Phones*, FEDERAL COMMUNICATIONS COMMISSION,

these merely reflect the number of individuals that complained to these agencies; the number of people that have been victimized by robocalling abuse could be close to 100,000,000 in the last 3 years.

3. "Senator Hollings, the TCPA's sponsor, described these calls as 'the scourge of modern civilization. They wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone out of the wall.' 137 Cong. Rec. 30, 821 (1991). Senator Hollings presumably intended to give telephone subscribers another option: telling the autodialers to simply stop calling." *Osorio v. State Farm Bank, F.S.B.*, 746 F. 3d 1242, 1256 (11th Cir. 2014). Despite the penalties put in place over 26 years ago, robocall abuse continues to skyrocket.

4. Plaintiff, TRAKILISHA SIMMONS, alleges Defendant, FIRST PREMIER BANK, N.A., robocalled her more than 75 times in stark violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA") and the Georgia Fair Business Practices Act, O.C.G.A. § 10-1-399. ("FBPA").

5. Robocalls are very inexpensive to make. As was noted in a Senate hearing on the subject: "With such a cheap and scalable business model, bad actors can blast literally tens of millions of illegal robocalls over the course of a single day at less than 1

---

https://apps.fcc.gov/edocs_public/attachmatch/DOC-333676A1.pdf; *National Do Not Call Registry Data Book FY 2014*, FEDERAL TRADE COMMISSION (Nov. 2014), https://www.ftc.gov/system/files/documents/reports/national-do- not-call-registry-data-book-fiscal-year-2014/dncdatabookfy2014.pdf.

cent per minute." *Stopping Fraudulent Robocall Scams: Can More Be Done?: Hearing Before the Subcomm. on Consumer Prot., Prod. Safety, and Ins. of the S. Comm. on Commerce, Sci., and Transp.*, 113 Cong. 113-117 (2013) (statement of Lois Greisman, Assoc. Director, Division of Marketing Practices, Bureau of Consumer Protection, Federal Trade Commission).

6. The TCPA was enacted to prevent companies like Defendant from invading American citizens' privacy and prevent illegal robocalls.

7. Congress enacted the TCPA to prevent real harm. Congress found that "automated or pre-recorded calls are a nuisance and an invasion of privacy, regardless of the type of call" and decided that "banning" such calls made without consent was "the only effective means of protecting telephone consumers from this nuisance and privacy invasion." Pub. L. No. 102-243, §§ 2(10-13) (Dec. 20, 1991), codified at 47 U.S.C. § 227; *see also Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 744 (2012) ("The Act bans certain practices invasive of privacy").

8. According to findings by the FCC—the agency Congress vested with authority to issue regulations implementing the TCPA—such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient. The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used.

## JURISDICTION AND VENUE

9. Jurisdiction and venue for purposes of this action are appropriate and conferred by 28 U.S.C. §1331.

10. The alleged violations described in the Complaint while Plaintiff was in N/A County, Georgia.

## FACTUAL ALLEGATIONS

11. Plaintiff is a natural person, and citizen of the State of Georgia, residing in N/A County, Georgia.

12. Plaintiff is the "called party." *See Breslow v. Wells Fargo Bank, N.A.*, 755 F. 3d 1265 (11th Cir. 2014); *Osorio v. State Farm Bank, F.S.B.*, 746 F. 3d 1242 (11th Cir. 2014).

13. Defendant is a corporation with its principal place of business in South Dakota, and conducts business in the state of Georgia.

14. Plaintiff is the regular user and carrier of the cellular telephone number at issue, 912-631-1815 and potentially other numbers of Plaintiff.

15. Plaintiff was the "called party" during each phone call subject to this lawsuit.

16. Defendant intentionally harassed and abused Plaintiff on numerous occasions by calling several times during one day, and on back to back days, with such frequency as can reasonably be expected to harass.

17. On or about January 1st, 2017, Plaintiff received a telephone call to her aforementioned cellular telephone number from Defendant seeking to recover a debt regarding a bank account from the Plaintiff.

18. Immediately upon receipt of the calls, after January 1st, 2017, Plaintiff answered a call from Defendant and explained that she felt harassed by all of the calls, and demanded that Defendant stop calling her aforementioned cellular telephone number.

19. In or about January 1st, 2017, during the aforementioned phone conversation with Defendant's agent/representative, Plaintiff expressly revoked any express consent Defendant may have mistakenly believed it had for placement of telephone calls to Plaintiff's aforementioned cellular telephone number by the use of an ATDS or a pre-recorded or artificial voice.

20. In or about June 1st, 2017, Plaintiff again told the Defendant to stop calling.

21. After a few weeks, Defendant started calling again.

22. Some of the calls were in the morning, and some calls were in the morning.

23. Plaintiff told Defendant to stop calling once.

24. Plaintiff told Defendant to stop calling twice.

25. Plaintiff told Defendant to stop calling three times.

26. Plaintiff told Defendant to stop calling four times.

27. Plaintiff told Defendant to stop calling five times.

28. Plaintiff told Defendant to stop calling six times.

29. Plaintiff told Defendant to stop calling seven times.

30. Plaintiff told Defendant to stop calling eight times.

31. Plaintiff told Defendant to stop calling nine times.

32. Plaintiff told Defendant to stop calling 10 times.

33. Plaintiff told the agents on approximately 20 occasions to stop calling her.

34. Defendant attempted to collect a debt from the Plaintiff by this campaign of telephone calls.

35. Defendant made at least one call to 912-631-1815.

36. Defendant made at least one call to 912-631-1815 using an "automatic telephone dialing system" (ATDS).

37. Defendant made at least ten (10) calls to 912-631-1815.

38. Defendant made at least ten (10) calls to 912-631-1815 using an ATDS.

39. Defendant made at least one hundred (100) calls to 912-631-1815.

40. Defendant made at least one hundred (100) calls 912-631-1815 using an ATDS.

41. Each call the Defendant made to 912-631-1815 in the last four years was made using an ATDS.

42. Each call the Defendant made to the Plaintiff's cell phone was done so without the "express permission" of the Plaintiff.

43. Each call the Defendant made to the Plaintiff was made using an ATDS,

which has the capacity to store or produce telephone numbers to be called, without human intervention, using a random or sequential number generator; and to dial such numbers as specified by 47 U.S.C § 227(a)(1).

44. Furthermore, many of the calls at issue were placed by the Defendant using a "prerecorded voice," as specified by the TCPA, 47 U.S.C. § 227(b)(1)(A).

45. Plaintiff repeatedly requested the Defendant to stop calling her cell phone, however, the Defendant continued to make calls.

46. Plaintiff's conversations with the Defendant demanding an end to the harassment were ignored.

47. Defendant has recorded at least one conversation with the Plaintiff

48. Defendant has recorded numerous conversations with the Plaintiff.

49. Defendant has made approximately 75 calls to Plaintiff's aforementioned cellular telephone number from in or about January 1st, 2017 until today, which will be established exactly once Defendant turns over their dialer records.

50. Despite actual knowledge of their wrongdoing, the Defendant continued the campaign of abusive robocalls.

51. Defendant has been sued in federal court where the allegations include: calling an individual using an ATDS after the individual asked for the calls to stop.

52. By effectuating these unlawful phone calls, Defendants have caused Plaintiff the very harm that Congress sought to prevent—namely, a "nuisance and

invasion of privacy."

53. Defendant's aggravating and annoying phone calls trespassed upon and interfered with Plaintiff's rights and interests in her cellular telephone and cellular telephone line, by intruding upon Plaintiff's seclusion.

54. Defendant's phone calls harmed Plaintiff by wasting her time.

55. Moreover, "wireless customers [like Plaintiff] are charged for incoming calls whether they pay in advance or after the minutes are used." In re: Rules Implementing the TCPA of 1991, 23 FCC Rcd 559, 562 (2007). Defendant's phone calls harmed Plaintiff by depleting the battery life on her cellular telephone, and by using minutes allocated to Plaintiff by her cellular telephone service provider.

56. Defendant's corporate policy and procedures are structured as to continue to call individuals like the Plaintiff, despite these individuals revoking any consent the Defendant may have mistakenly believed it had.

57. Defendant's, corporate policy and procedures provided no means for the Plaintiff to have her aforementioned cellular number removed from the call list.

58. Defendant has a corporate policy of using an ATDS or a prerecorded or artificial voice message to collect debts from individuals such as Plaintiff for its financial benefit.

59. Plaintiff expressly revoked any consent Defendant may have mistakenly believed it had for placement of telephone calls to Plaintiff's aforementioned cellular

telephone by the use of an ATDS or a pre-recorded or artificial voice immediately upon Defendant's placement of the calls.

60. Defendant never had the Plaintiff's express consent for placement of telephone calls to her aforementioned cellular telephone by the use of an ATDS or a pre-recorded or artificial voice.

61. None of Defendant's telephone calls placed to Plaintiff were for "emergency purposes" as specified in 47 U.S.C. §227(b)(1)(A).

62. Defendant violated the TCPA with respect to the Plaintiff.

63. Defendant willfully or knowingly violated the TCPA with respect to the Plaintiff.

## COUNT I

### (Violation of the TCPA)

64. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

65. Defendant willfully violated the TCPA with respect to the Plaintiff each time they called the Plaintiff after she revoked her consent to being called by them using an ATDS or pre- recorded voice.

66. Defendant knowingly violated the TCPA with respect to the Plaintiff, especially for each of the auto-dialer calls made to Plaintiff's cellular telephone after Plaintiff revoked her consent to being called by them using an ATDS or pre-recorded

voice.

67. Defendant, FIRST PREMIER BANK, N.A., repeatedly placed non-emergency telephone calls to the wireless telephone number of Plaintiff using an automatic telephone dialing system or prerecorded or artificial voice without Plaintiff's prior express consent in violation of federal law, including 47 U.S.C § 227(b)(1)(A)(iii).

68. As a result of Defendant's illegal conduct, Plaintiff suffered actual damages and, under § 227(b)(3)(B), is entitled to, *inter alia*, a minimum of $500.00 in damages for each such violation of the TCPA.

69. Plaintiff is also entitled to, and does, seek injunctive relief prohibiting Defendant, FIRST PREMIER BANK, N.A., from violating the TCPA in the future.

**WHEREFORE**, Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against Defendant for statutory damages, punitive damages, actual damages and any other such relief the court may deem just and proper.

## COUNT II.

## VIOLATION OF THE GEORGIA FAIR BUSINESS PRACTICES ACT ("GFBPA"), O.C.G.A. § 10-1-390, *et seq.*

70. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

71. The Defendant's actions in attempting to collect a debt have taken place in the conduct of consumer acts or practices.

72. Defendant violated the GFBPA by use of unlawful acts and practices within the meaning of O.C.G.A. § 10-1-390.

73. These calls continue at the time of the filing of this complaint.

74. Using an illegal phone dialing system to collect a debt is an unfair or deceptive act.

75. Defendant was abusive in the collection of debt.

76. Defendant acted intentionally in violating the GFBPA.

77. Plaintiff suffered damages because of Defendant's violations of the GFBPA as described above and to be further established at trial.

78. Defendant DOES 1-10 inclusive do not have any assets or property within the state of Georgia.

79. Plaintiff is entitled to the recovery of damages and reasonable attorney's fees pursuant to O.C.G.A. § 10-1-399 *et seq.*

80. Plaintiff is entitled to treble damages.

## COUNT III

## BAD FAITH ATTORNEY FEES

81. Plaintiff incorporates Paragraphs one (1) through one hundred and three (103).

82. Defendants willingly, knowingly, and intentionally violated the TCPA in

making autodialed telephone calls to Plaintiff's cellular telephone number(s) without prior express consent.

83. "Every intentional tort invokes a species of bad faith that entitles a person wronged to recover the expenses of litigation including attorney fees." *Tyler v. Lincoln*, 272 Ga. 118, 527 S.E.2d 180 (Ga. 2000).

84. "There is no requirement that a viable state law claim exist in order for the jury to award litigation expenses pursuant to OCGA § 13-6-11. Rather, 'OCGA § 13-6-11 constitutes a vehicle for the collection of attorney fees' even when only a federal law claim for damages is submitted to the finder of fact." *Fulton County v. Legacy Inv. Group, LLC*, 296 Ga.App. 822, 827 (2009).

85. Defendants have acted in bad faith, been stubbornly litigious or caused the Plaintiff, unnecessary trouble and expense, and as such, Plaintiff is entitled to an award of litigation expenses, including a reasonable attorneys' fee, pursuant to O.C.G.A. § 13-6-11.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays that judgment be entered against Defendant as follows:

- for an award of statutory damages of $500.00 per call pursuant to 47 U.S.C. § 227(b)(3)(B);

- for an award of treble damages of $1,500.00 per call pursuant to 47 U.S.C. § 227(b)(3);

- for an award of attorney's fees pursuant to O.C.G.A. 10-1-390 *et seq*.;

- for an award of damages pursuant to O.C.G.A. § 10-1-390 *et seq*.;

- for an award of treble damages pursuant to O.C.G.A. § 10-1-390 *et seq*.;

- for an award of attorney's fees; and

- any other such relief the court may deem just and proper.

Respectfully submitted,

**JOSEPH P. MCCLELLAND, LLC**

By:  **s/Joseph P. McClelland**
Joseph P. McClelland, Esq.
Attorney I.D.#483407
Post Office Box 100
Jackson, Georgia 30233
Telephone:  (770) 775-0938
Facsimile: (770) 775-0938
joseph@jacksonlaws.com
**Attorney for Plaintiff**